[Civ. No. 4209. Third Appellate District.—November 17, 1930.]

RAPHAELITA SUYTAR, Appellant, v. C. F. WEINEKE, Respondent.

Edgar W. Howell for Appellant.

Blackstock & Rogers and Wayne L. Clark for Respondent.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an equitable action to declare a trust in real property which was purchased at a foreclosure sale. The respondent is charged with having procured the title by fraud.

The appellant was the owner of a part of lot 39 of the Rancho Santa Ana in Ventura County consisting of 29.63

acres of farm land. January 17, 1922, she mortgaged the property to the Home Savings Bank of Ventura for $5,000. For default of payments when they became due, a suit for foreclosure was instituted. The mortgagor failed to appear or answer in that suit and a decree of foreclosure was rendered October 11, 1924, for the sum of $6,406.39. The following month the property was disposed of at sheriff's sale to one Chaffee for the amount of the judgment. Five other judgment creditors of the appellant were made parties defendant in the foreclosure action. These claims were included in the decree of foreclosure preserving their rights of redemption. Within the period of redemption the respondent purchased the equity of one of the judgment redemptioners which was duly assigned to him. The property was then redeemed by the respondent on November 9, 1925, through his attorney Clark, pursuant to the provisions of section 702 of the Code of Civil Procedure for the sum of $7,175.16. A sheriff's deed to the property was executed and delivered to the respondent who thereupon took possession and made valuable improvements. The appellant had previously abandoned the occupancy of the premises.

This suit was commenced in July, 1927, to establish a trust in the respondent for the benefit of the appellant on the ground that the property was redeemed and acquired by the respondent by means of fraud. It is contended that a trust *ex maleficio* was thus created by law in favor of Raphaelita Suytar.

The complaint alleges that prior to the expiration of the time allowed by law for the redemption of the property from the foreclosure sale the respondent "promised plaintiff that he would loan her the money to make such redemption; that he would take care of the matter and redeem it for her; . . . that she need not look elsewhere for help; that he would take her to the sheriff's office in the afternoon of the last day of the period of redemption (so) that she could redeem said property for herself . . . ". It is not alleged that the appellant ever offered to go with the respondent to redeem the property pursuant to his alleged promise to do so. It is not alleged that the appellant could have procured the money elsewhere with which to redeem the property if she had not relied on the foregoing promise of the respondent. There was no offer or tender to compen-

sate the respondent for the money expended in redeeming the property or making the improvements thereon.

The court found that the appellant had complete knowledge at all times of the proceedings for redemption of the property by the respondent; that the respondent did not promise to redeem the property for the appellant or loan her the money with which to do so and that the respondent did not deceive or defraud her in that regard. Thereupon judgment was rendered to the effect that the appellant take nothing by her action. From this judgment/ an appeal was perfected.

The appeal is without merit. There is substantial evidence to sustain every necessary finding to support the judgment.

The respondent testified that in December, 1924, after the sheriff's sale of the property in the foreclosure proceedings, he inquired of a real estate agent by the name of Gabbert for a suitable farm to purchase and was then told of the Suytar property, which was quoted at a valuation of about $8,000. He subsequently interviewed the appellant and in the course of negotiations offered her $1,000 for her equity in the place, which she refused. "Q. Was there anything said at that time about your making a loan to her for the . . . redemption of it? A. Not a word." He said that subsequently, in July, 1925, "she asked me to make the loan. . . . I told her I was not in the loaning business. . . . Q. Did you ever at any time . . . offer to loan her the money to redeem this property. . . . A. Never. . . . In March . . . of 1925, . . . she brought it up again. . . . I told her that I would be willing to take an assignment and redeem it in my own name, . . . and I agreed to give her a contract to buy it back at a reasonable profit. . . . She never accepted it. Q. Was there ever a contract made or arrangement reached between you on that basis at all? A. Never." The respondent went abroad soon after this conversation and did not return until November 5, 1925, which was five days before the equity of redemption expired. During this interval he neither saw nor communicated with the appellant. On the day of his return the appellant sent for him and again asked him to finance the redemption of the property for her. In reply to this request he testified: "I told her absolutely no. . . . I told her

it was out of the question, that I couldn't do anything. Q. Did you on that occasion, or any occasion say to her or promise her that you would redeem the property for her? A. Never. Q. Did you . . . tell her that she should not worry, that you would take care of it for her? A. I did not." November 9th was the last day upon which the property could be redeemed. About 3 o'clock in the afternoon of that day the respondent consulted with his attorney, Mr. Clark, who informed him that he might purchase the equity of one of the judgment redemptioners and thus redeem the property. The respondent assumed that the appellant could not and would not redeem the property. On the afternoon of the last day authorized he therefore obtained an assignment of the interest of one of the judgment creditors who was a party to the action and redeemed the property in the name of his attorney. From the time of his last conference with the appellant on November 5th, the respondent did not again see her until after the redemption had been completed. The respondent took title and immediate possession of the property and proceeded to construct and make valuable improvements.

Among the circumstances which persuaded the respondent that it was financially unsafe for him to advance the money to the appellant for the purpose of redeeming the property was that during her ownership of the premises, the cultivation and improvements had been sadly neglected and that no part of the interest on the indebtedness nor taxes were paid. The appellant knew of the redemption of the property by the respondent and frequently met and talked with him thereafter. On these occasions she appeared to be perfectly friendly toward him. She did not criticise his purchase of the property and did not charge him with violating the alleged agreement to finance her redemption of the place. The first intimation of a charge by appellant of bad faith or fraud on the part of the respondent was brought to his attention by the filing of the complaint. By her conduct she seemed to acquiesce in his purchase of the place. She visited the premises and talked with him about the improvements. She endeavored to sell to him machinery and household equipment which had been used on the property. Indeed, she apparently anticipated a loss of the place, for prior to respondent's taking possession she aban-

doned the property and secretly removed a bathtub and certain plumbing.

This suit was not commenced until eighteen months after the redemption of the property. The facts of this case do not establish a trust *ex maleficio*. They indicate negotiations which did not culminate in an agreement. Fraud must be shown by clear and satisfactory proof. (12 R. C. L. 436, sec. 183.) The evidence in this case falls far short of that requirement. Certainly the findings are amply supported by persuasive testimony.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 17, 1930.